IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

MICHAEL DON DENTON,                        §
                                           §
        Petitioner,                        §
                                           §
v.                                         §          2:12-CV-0192
                                           §
WILLIAM STEPHENS, Director,                §
Texas Department of Criminal Justice,      §
Correctional Institutions Division,        §
                                           §
        Respondent.                        §

**REPORT AND RECOMMENDATION TO GRANT
PETITION FOR A WRIT OF HABEAS CORPUS**

Came for consideration the Petition for a Writ of Habeas Corpus by a Person in State

Custody filed by petitioner MICHAEL DON DENTON.  For the reasons set forth below, it is the

opinion of the undersigned United States Magistrate Judge that the petition be GRANTED and that

the convictions which are the subject of the petition for writ of habeas corpus be vacated unless

petitioner is afforded an out-of-time appeal within such reasonable time as the District Judge may

set.

I.
PROCEDURAL HISTORY

On January 10, 2007, petitioner was indicted in the 181st Judicial District Court of Randall

County, Texas for two (2) offenses of delivery of a controlled substance in an amount of 4 grams or

more, but less than 200 grams.  *State v. Denton*, No. 18,607-B and 18,608-B.  Petitioner entered into

a plea agreement for four (4) years deferred adjudication and a fine of $2,000 and, on July 26, 2007, pled guilty in both cases. The state trial court accepted petitioner's pleas and found the evidence substantiated petitioner's guilt. The court entered an order deferring adjudication of guilt, placed petitioner on four (4) years probation, and assessed a fine and restitution in accordance with the plea agreement. Petitioner did not file a direct appeal challenging the order deferring adjudication of guilt and assessing probation, the fine or the restitution.

In February and August 2009, the State moved to revoke petitioner's probation. Both times, the trial court did not revoke, but allowed petitioner to remain on probation with additional conditions. The court also imposed a 1-year extension of probation. On February 17, 2010, the State again filed a motion to revoke petitioner's probation alleging petitioner had violated the conditions of his probation by (1) committing a new offense, and failing to (2) report to his probation officer June 2009 through August 2009, (3) pay his fine and court costs, (4) submit to a urinalysis in February 2010, and (5) participate in a residential treatment program. Petitioner pled "not true" to the motion to revoke and to adjudicate. On March 15, 2010, petitioner retained counsel, Mr. Terry McEachern, to represent him in the revocation proceeding. The State subsequently waived the probation violation allegations of (1) the commission of a new offense and (3) non-payment of fine and court costs. Vol. 4 at 68. On March 24, 2010, the state trial court held a revocation hearing, receiving testimony from witnesses for both the State and petitioner. After the hearing, the state trial court granted the State's motion to revoke finding petitioner had violated the terms of his probation by failing to (2) report to his probation officer June 2009 through August 2009, (4) submit to a urinalysis in February 2010, and (5) participate in a residential treatment program. The trial court adjudicated petitioner guilty of the original offenses and, after a

punishment hearing at which a State witness provided the details of the original narcotics delivery charges, petitioner was sentenced to twenty (20) years' imprisonment in each case, such sentences to run concurrently.  Trial counsel as well as the trial court advised petitioner of his right to appeal.

On April 6, 2010, petitioner retained counsel, Mr. David Martinez, to appeal the sentences. Mr. Martinez was paid a fee of $20,000 by petitioner's mother.  On April 26, 2010, counsel Martinez filed a motion for new trial in each case alleging ineffective assistance of counsel during the revocation/ adjudication proceeding.  Specifically, Mr. Martinez argued counsel failed to seek a continuance of the revocation hearing due to his unpreparedness, failed to subpoena witnesses that could have clarified issues in the case, failed to object to the trial court hearing the State's amended motion to revoke due to irregularities, failed to object to the allegations regarding petitioner's failure to participate in a residential drug treatment program, and failed to discover evidence which would have shown the alleged violation of petitioner committing a new offense was based on a fabrication and a conspiracy.[1]

On May 5, 2010, counsel Martinez filed notices of appeal in both cases initiating direct appeals.  On May 17, 2010, the trial court certified petitioner's right to appeal in both cases.

On May 17, 2010, the state trial judge recused himself and, on May 24, 2010, a new judge was assigned to the case.  As of June 7, 2010, no hearing had been held on the April 26, 2010 motions for new trial and no written orders had been entered.  Consequently, the motions for new trial were denied by operation of law.  *See* Tex. R. App. Proc. R. 21.8 (Vernons 2010) (a motion for new trial not ruled on by written order within 75 days after sentence is imposed in open court is deemed denied when the 75-day period expires).

---

[1] The State had waived the "new offense" violation allegation and the trial court did not find petitioner committed this alleged violation.  The trial court did not take the new offense charges into consideration at sentencing.  Vol. 4 at 105.

Even though the motions for new trial had been denied, the direct appeals remained pending with petitioner's appellate briefs in both cases due August 11, 2010. No briefs were filed and on August 25, 2010, the state appellate court notified counsel Martinez that the briefs were past due and that unless appellate briefs were filed by September 7, 2010, the appeals would be abated and remanded to the trial court for further action. Counsel was further advised that motions to extend the time in which to file petitioner's briefs were required.

On September 1, 2010, counsel Martinez wrote petitioner stating:

> Every time I read and re-read your record, I think about other issues and so the research just goes on and on. Believe me, I have been trying to address all the issues that I see in a meaningful and fast paced manner . . . and trying to think of everything imaginable to attack Terry [McEachern]. . . . Do not feel that I am neglecting you in any way, and your case is just as important as any that I currently have. I got behind in my work but you will have the completed product in your hands by September 7, 2010 [the new appellate deadline for filing a brief].

However, the appellate briefs were not filed by the September 7, 2010 deadline and, instead, on September 8, 2010, counsel filed motions seeking extensions of time, until September 26, 2010, to file the appellate briefs. Counsel Martinez cited an "unordinary [sic] amount of preparation for jury trial" in various cases and then stated:

> Even though Appellant's attorney has done some briefing of the applicable issues to be raised on appeal there has been a suggestion by Appellant that he would rather dismiss his appeal in favor of an 11.07 writ.

On September 10, 2010, the state appellate court granted petitioner until September 27, 2010 to file appellate briefs, noting that the court does not ordinarily grant subsequent extensions absent good cause and does not generally consider the normal press of business good cause.

On October 8, 2010, petitioner's briefs had still not been filed. Petitioner's cases were abated and remanded to the trial court to determine whether petitioner desired to prosecute the

appeals, whether retained counsel Martinez would diligently pursue the appeals, or whether counsel should be appointed to pursue appeals for petitioner.

On October 14, 2010, counsel Martinez wrote petitioner stating:

Enclosed please find a copy of the [appellate] Court's last opinion on your case dated October 8, 2010. We received it on October 12, 2010. We have an appointment to see you on Thursday, October 21, 2010 at 2:00 p.m.

We do not believe in filing a frivolous appeal, because all it will do is delay our chance at getting a hearing on our Motion for New Trial, before Judge Ron Enns, who is in control of your destiny.[2]

First of all, all the issues that we read that arise on your appeal boil down to one issue. Did the trial Court abuse its' discretion in revoking your probation? We are enclosing you with numerous cases that conclude that a single violation of community supervision is sufficient to support a revocation. *State v. Hernandez*, *05-08-00216-CR* – Court of Appeals Texas, Fifth District Dallas, January 29, 2009. The record reflects that [Judge] Board found the allegations concerning the dirty [urinalysis], failure to attend CTRC, and failure to report. Even though an attempt was made to explain why you did not report or attend CTRC, there was never an explanation made as to why you did not take the [urinalysis] and left the probation department, after making a payment without coming back. It is my firm belief that the appeals court will find that one violation was sufficient to revoke your probation.

In regards to an ineffective assistance of counsel claim, we believe that we can prove the first prong of *Strickland v. Washington*, 466 U.S. 668, that counsel's assistance fell below an objective professional standard of reasonableness, but how do we prove prejudice of your defense. The way the record stands, [Judge] Board sentenced you to 20 years because he mentions on the record that this was a case of a "drug dealer" not a drug user. The reason being you had no witnesses to contradict the allegations from [Officer] Harbert [concerning the original charges] and of course [counsel] McEachern did not even cross-examine him. . . .

We are going to have to get affidavits from your witnesses. We also looked at the due process, double jeopardy and *res judicata* issues in regards to the State dismissing the Motion to Proceed after the January hearing and then refiling a New Motion on February 17, 2010 . . .[however case law] does not favor us on these issues at all.

The best and your better chance of going forward is going to be what we both discussed

---

[2]The motion for new trial had been overruled by operation of law on or about June 7, 2010.

when we discussed your appeal on July 2, 2010 and that is proceeding on (1) the abuse of the trial court's discretion in not granting us a hearing on our Motion for New Trial . . . and fine tuning the attack on [counsel] McEachern for not representing [sic] meaningful evidence, i.e., witnesses to contradict [Officer] Harbert's testimony. We are also enclosing copies of other cases . . . so that you can get a better grasp of an appeal with little or no chance of success versus an 11.07 writ under an 11.07 writ [sic] we cannot pursue it unless you withdraw your appeal.

We know this is a lot of information and material to absorb, but you need to focus on what the record does not currently show is all the failures and requests you made of your previous attorney and we need to prove up the fact that [Judge] Board was given notice of our request for New Trial and hearing and for some reason did not do so. Additionally, we are sending you an index of the Clerk's Record, which does not show that [Judge] Board was actually presented with our Motion [for New Trial], when I can in fact prove that he was!  Otherwise, how did he know to recuse himself?!

On October 21, 2010, petitioner signed a typed affidavit with the caption and heading for both

appellate court cases which stated:

I, Michael Denton, have received a copy of the Court of Appeals opinion dated October 8, 2010, from my attorney, David Martinez.

After discussing the issues addressed in said opinion, I would like to advise the Court of Appeals that I hereby voluntarily and knowingly withdraw my Notice of Appeal.  I am satisfied that my hired attorney has rendered effective assistance in regards to pursuing my appellate rights.

Even though I am incarcerated I am not indigent and am able to hire my own attorney. Prior to today's date [October 21, 2010], I had thought about withdrawing my Notice of Appeal but I had not advised my attorney that he had my consent to file a Motion to Dismiss my appeal.

On October 27, 2010, counsel Martinez filed a motion to dismiss both appeals, attaching

petitioner's affidavit to the motions.  On October 28, 2010, the Court of Appeals for the Seventh

District of Texas dissolved the abatement, reinstated the appeals in both cases, granted petitioner's

motions to dismiss, and dismissed both appeals. *Denton v. State*, Nos. 07-10-00189-CR & 07-10-

00190-CR.  Other than the correspondence from counsel Martinez to petitioner, the record prior to

the evidentiary hearing did not reflect what issues counsel Martinez would have raised on direct

appeal, nor had petitioner indicated what specific issues he wished to raise on direct appeal.

On December 28, 2010, counsel Martinez wrote petitioner regarding his "11.07 writ" stating that "timing is everything" and that he would file state habeas writs for petitioner on January 6, 2011.  Martinez indicated he would be seeking a hearing before the trial court and would attempt to convince the trial judge "to do what needs to be done" on petitioner's case.

On June 22, 2011, counsel Martinez filed state applications for writs of habeas corpus challenging each of petitioner's convictions and sentences.  Those state applications alleged:

1.    the trial court abused its discretion in failing to hold a hearing on the motion for new trial; and

2.    ineffective assistance of counsel during the revocation proceedings for failing to call witnesses and refusing to allow petitioner to testify.

In the applications, Martinez indicated petitioner had appealed from his judgments of conviction.  In its answer filed five (5) days later, the State argued:

1.    petitioner had defaulted his abuse of discretion claim by failing to raise it on direct appeal; and

2.    petitioner failed to support his claims of ineffective assistance of counsel with any evidence or proof and thus the claims were defaulted, or petitioner could not demonstrate prejudice by showing the revocation would be set aside.

The state trial court did not enter findings of fact or conclusions of law in either case.  On September 21, 2011, the Texas Court of Criminal Appeals denied petitioner's state habeas applications without written order.  *In re Denton*, App. No. 76,206-01, -02.  Such a denial is considered an adjudication on the merits.  *See Ex parte Santana*, 227 S.W.3d 700, 704 (Tex.Crim.App. 2007); *Ex parte Grigsby*, 137 S.W.3d 673 (Tex.Crim.App. 2004).

On June 3, 2012, petitioner, acting *pro se*, filed additional state applications for writs of habeas corpus challenging his convictions and sentences, such applications being file marked June

8, 2012.[3]  These applications alleged petitioner was denied effective assistance of appellate counsel because Mr. Martinez erroneously advised petitioner to dismiss his direct appeals and proceed, instead, with petitions for writs of habeas corpus.  On June 13, 2012, the State filed answers arguing:

1.      Petitioner's habeas applications should be dismissed for abuse of the writ;

2.      Petitioner had not proven "exactly *what* appellate counsel's advice was and *whether* such advice fell below the prevailing standard of competence" and thus had not established counsel was deficient; and

3.      Petitioner had not proven there were trial issues appellate counsel could have raised which would have "*necessarily required* reversal and remand had appellate counsel filed a brief on direct appeal rather than the writ application" and thus had not established petitioner was prejudiced by appellate counsel's actions.

On August 1, 2012, the Texas Court of Criminal Appeals disposed of petitioner's state habeas applications without reaching the merits, *viz.,* the court dismissed petitioner's applications as subsequent applications in violation of article 11.07, § 4(a)-(c) of the Texas Code of Criminal Procedure.  *In re Denton*, App. No. 76,206-03, -04.

On September 1, 2012, petitioner executed two (2) federal habeas applications which were received by this Court and file-marked on September 4, 2012.  *See Denton v. Thaler*, Nos. 2:12-CV-192 and 2:12-CV-193.  Upon petitioner's motion, the Court consolidated the cases.  Respondent filed a motion to dismiss petitioner's federal habeas application as time barred and, on September 5, 2013, the United States District Judge adopted a Report and Recommendation filed August 19, 2013

---

[3]This Court considers the date of the Declaration to be the date petitioner deposited his petition with prison authorities for application of the state's mailbox rule as set forth in *Richards v. Thaler*, 2013 WL 809246 (5th Cir. March 5, 2013) (citing *Campbell v. State*, 320 S.W.3d 338, 344 (Tex.Crim.App. 2010)).  *Cf. Young v. Stephens*, 2013 WL 2479710 (N.D. Tex. June 10, 2013); *Neighbors v. Thaler*, 2013 WL 2099255 (N.D. Tex. May 3, 2013); *Clark v. Thaler*, 2013 WL 1943309 (N.D. Tex. May 10, 2013); *Henson v. Thaler*, 2013 WL 1286214 (N.D. Tex. March 8, 2013).

and denied respondent's motion to dismiss.  On September 10, 2013, respondent was ordered to answer petitioner's habeas application.  On October 21, 2013, respondent filed an answer and, on November 25, 2013, petitioner filed a reply.

## II.
## EVIDENTIARY HEARING

An evidentiary hearing was held on May 1, 2014 at which petitioner, represented by appointed counsel, appeared.  Representatives of the Attorney General's Office appeared and represented respondent.

### A.  Petitioner Denton's Testimony

At the hearing, petitioner testified that after his conviction, Mr. Martinez was contacted to file appeals on petitioner's behalf, was paid a retainer and, ultimately, was paid a total of $20,000 for the appeals.  Petitioner testified that when he first met with Mr. Martinez in April 2010, counsel advised petitioner he would be filing motions for new trial in order to get "back in front of the judge" and argue various complaints about the propriety of the revocation proceeding.  Petitioner testified counsel Martinez explained he would be pursuing the motions for new trial at the same time as the appeals.

Petitioner testified he next met with counsel in July 2010 at which time counsel advised petitioner he was waiting on a hearing to be set on the motions for new trial.[4]  Petitioner testified he spoke with Mr. Martinez by phone between July and October 2010 after receiving paperwork from the appellate court concerning counsel's failure to meet appellate deadlines.  Petitioner testified he

---

[4]The Motion for New Trial was overruled by operation of law on or about June 7, 2010.

was advised "every thing was fine" and that he (Martinez) had spoken to the court.

Petitioner testified that on October 14, 2010, counsel Martinez corresponded with petitioner, attaching a copy of the appellate court's remand and advising petitioner he would not file frivolous appeals because it would delay getting a hearing on the motions for new trial. Petitioner testified Mr. Martinez further advised he was obtaining affidavits from witnesses, that the trial court abused its discretion in not giving petitioner a hearing on his motions for new trial, and that he would pursue state petitions for a writ of habeas corpus, but only if petitioner withdrew his appeals.

Petitioner testified that on October 21, 2010, he met with Mr. Martinez in person. Petitioner testified he was advised not to worry and that everything was proceeding as planned. Petitioner testified he was advised a habeas corpus proceeding, as opposed to a direct appeal, would be a quicker avenue by which to present his claims challenging the revocation proceeding. Petitioner stated counsel told him he could raise the same challenges on habeas corpus that he could on direct appeal, and that the failure of the trial court to hold a hearing on the motion for new trial was an additional ground that could be raised on habeas. Petitioner averred counsel advised him that a habeas corpus proceeding could be resolved in 45 days while an appeal would typically take nine (9) months for a resolution and that waiving the pending direct appeals would speed up the process. Petitioner testified Mr. Martinez presented him with a pre-drafted Motion to Dismiss Appeal and a supporting affidavit for petitioner to sign. Petitioner stated he signed the affidavit supporting the dismissal of the appeals where counsel Martinez indicated for him to sign, and that such action was based solely on counsel's instruction and advice and without petitioner's full understanding of why the appeals should be dismissed. Petitioner also testified Mr. Martinez told him he had begun drafting the state habeas petitions.

Petitioner stated he did not receive or review a copy of the proposed state habeas petitions prior to their eventual filing on June 22, 2011.  Petitioner testified he never received copies of the petitions from counsel, but did receive copies of the petitions from the State when it forwarded its answer raising the issue of procedural default for failing to raise the abuse of discretion claim on direct appeal.  Petitioner testified he, as well as his mother, unsuccessfully attempted to contact Mr. Martinez.  Petitioner testified he received the notification from the Texas Court of Criminal Appeals that his state habeas applications had been denied without written order on September 21, 2011.

### B.  Appellate Counsel Martinez's Testimony

Mr. David Martinez testified he was initially contacted by petitioner's mother to appeal petitioner's probation revocations and convictions, but that he suggested they first file a motion for new trial in each case because the filing of such a motion allows more time to investigate possible grounds before filing a notice of appeal.  Mr. Martinez acknowledged the basis for the motions for new trial he filed was not an accurate reflection of the law as it existed at that time, but that it was his good faith, although mistaken, belief that it was.  Mr. Martinez acknowledged the timeliness of the motions for new trial was initially at issue, requiring additional briefing on his part, and he acknowledged that although his reason for filing the motions for new trial was to allow additional time to investigate possible grounds before initiating an appeal, he inadvertently filed the notices of appeal only ten (10) days after filing the motions for new trial rather than waiting the allotted 75 days for the motions to be overruled by operation of law, before beginning the appellate process.

Mr. Martinez testified that by May 2010, it was obvious to him that any appeal he filed on petitioner's behalf would be frivolous.  Martinez testified, however, that he did not receive the complete transcription of the revocation hearing until July 2010.  Martinez explained he did not

meet the August 11, 2010 deadline for filing appellate briefs because he had not discovered any grounds to challenge the revocation of petitioner's probation.  Mr. Martinez acknowledged that in his September 1, 2010 correspondence he promised petitioner a "completed product" by September 7, 2010 and acknowledged such product was an appeal brief.  Mr. Martinez further acknowledged he did not meet the extended deadline of September 27, 2010 for filing appellate briefs.

Mr. Martinez testified he initially believed he could raise, based upon the record, some grounds of ineffective assistance of counsel on direct appeal, but that subsequent research revealed he did not have valid grounds.  Counsel testified he changed his mind about the successfulness of an appeal, and feared being sanctioned if he filed a frivolous appeal, although he acknowledged that his October 14, 2010 correspondence was the first time he referred to the appeal as being frivolous.  He acknowledged he had stated an appeal would delay getting a hearing on the motions for new trial (which had already been denied), that he needed affidavits to support any state habeas writs, and that the best ground for a state habeas writ would be to assert the trial court abused its discretion in failing to hold a hearing on the motions for new trial.  Mr. Martinez further acknowledged his December 2010 correspondence advised petitioner he wanted the state trial judge to hold a hearing on the state writ applications, and that he indicated the state writs would be filed in January 2011, but were not filed until June 22, 2011.

Mr. Martinez acknowledged he prepared the motion to dismiss the appeal as well as the supporting affidavit and had petitioner sign the affidavit on October 21, 2010.  Mr. Martinez testified he did not prepare the motion to dismiss the appeal because of his failures to meet appellate briefing deadlines but, instead, considered dismissal of the appeals because he did not believe there were any meritorious grounds to present.  Counsel averred he did not coerce petitioner to sign the

affidavit to dismiss the appeal, but did advise petitioner it would be better for him to pursue 11.07 state habeas writs instead of the appeals.  Mr. Martinez testified he believed a state habeas writ was a better avenue to present the claims of ineffective assistance of counsel and abuse of trial court discretion for failing to hold a hearing on the motions for new trial.  Mr. Martinez further acknowledged he was aware that the dismissal of the appeal precluded any appeal on petitioner's behalf.

Mr. Martinez testified he filed the state habeas writs in June 2011 and must have met with petitioner to obtain his signature some time prior to filing.  He acknowledged he did not file any supporting affidavits with the state habeas writs and testified he last met with petitioner on November 20, 2011 and was aware, at that time, that the state writs had been denied and the direct appeals dismissed.  Martinez acknowledged he received, over time, $20,000 plus expenses for his work on petitioner's case.

On May 13, 2014, petitioner, represented by appointed counsel, filed a Memorandum of Law in Support of Habeas Relief.  Respondent did not file any post-evidentiary hearing brief.

III.
<u>PETITIONER'S CLAIMS</u>

Petitioner alleges his convictions and sentences violate his rights under the United States Constitution because:

1.      Petitioner was denied effective assistance of counsel on appeal because appellate counsel:

      A.      Failed to file appellate briefs or otherwise prosecute petitioner's appeals; and

      B.      Improperly advised petitioner to dismiss his direct appeals and file state applications for writs of habeas corpus in lieu of the appeals, and failed

to adequately explain the consequences thereof.

2.      Appellate counsel had a conflict of interest with petitioner.


IV.
EXHAUSTION and PROCEDURAL BAR

In his answer, respondent fully and accurately sets out the appropriate legal doctrines, requirements, and case law regarding exhaustion and procedural bar. *Answer*, at 5-7. These standards and supporting authority are applicable to this case and need not be repeated.

Respondent notes petitioner raised the ineffective assistance of appellate counsel claims asserted in this federal habeas case in his third and fourth (*pro se*) state habeas applications which were dismissed for abuse of the writ. Respondent argues petitioner has bypassed the state courts, presented an original argument to this federal court before the state court had an opportunity to rule on the argument, and prevented the state courts from correcting any constitutional error that may have occurred. Respondent concludes petitioner's claims are thus unexhausted. Respondent contends, however, that because the state court dismissed petitioner's claims for abuse of the writ, any subsequent attempt to present the claims to the state court would be procedurally barred and, therefore, petitioner's claims are barred under the federal procedural default doctrine.

Respondent is correct that petitioner did not raise his claims of ineffective assistance of appellate counsel in his first two state habeas applications filed by counsel Martinez, but raised those claims in subsequent *pro se* applications after the state court's denial of the earlier state habeas applications. In his *pro se* state habeas applications, however, petitioner fairly presented the substance of his federal claims to the state's highest court. The state court refused to consider petitioner's applications finding both of them were an abuse of the writ. Consequently, the state

court did not consider petitioner's claims on the merits.

Since petitioner's *pro se* state habeas applications were dismissed by the state court as abusive, petitioner has been effectively precluded from exhausting his ineffective assistance of appellate counsel claims.  While such a dismissal can constitute a valid state procedural bar preventing a court from hearing a petitioner's claims,[5] a court may consider a petitioner's unexhausted claims if the petitioner demonstrates *cause* for his procedural default or failure to properly present the claim, and *actual prejudice* as a result of a violation of federal law.

Here, petitioner would not have been aware of any ineffective assistance of appellate counsel claims until <u>after</u> the denial of the first two state habeas applications filed by counsel Martinez. Further, counsel Martinez could not be expected to raise claims of his own ineffectiveness in the state habeas applications he filed on petitioner's behalf.  Consequently, while this Court is of the opinion the "default" (the dismissal for abuse of the writ) should not have been entered in the first place, petitioner has shown *cause* for the default.  Moreover, as set forth below, petitioner will suffer *prejudice* if his federal claims are not heard.  Consequently, while the Texas courts did not hear petitioner's claims on the merits because of the dismissal of his *pro se* state habeas applications for abuse of the writ, petitioner no longer "has the right under the law of the State to raise, by any available procedure, the question presented."  Consequently, the federal petition is not subject to dismissal for failure to exhaust nor is it procedurally barred, and the merits of petitioner's claims are considered  below.

---

[5]*Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008) (dismissal for abuse of the writ is a dismissal on a valid state procedural bar that may foreclose federal habeas review of the merits of the claims).

V.
STANDARDS OF REVIEW, PRESUMPTIONS and DEFERENCE

In his answer, respondent accurately sets out the appropriate deferential standards under the

AEDPA when reviewing a state court adjudication on the merits, and the appropriate burden of

proof on the petitioner. *Answer*, at 9-15. However, while the standards and deference set forth by

respondent are correct statements of the law, AEDPA deference is *not* applicable to the ineffective

assistance of appellate counsel claims raised by petitioner in his *pro se* state habeas applications

since the merits of the claims were never addressed by the state courts. Specifically, state court

adjudications are entitled to deference only when the state court has fully adjudicated the same

claim brought in federal court. *See* 28 U.S.C. § 2254(d); *see Canales v. Stephens*, 2014 WL

4290612 *5 (5th Cir. 2014). Since the Texas Court of Criminal Appeals dismissed petitioner's *pro*

*se* state habeas applications for abuse of the writ, the state court did not fully adjudicate, on the

merits, the ineffective assistance of appellate counsel claims presented in this federal habeas

proceeding. Consequently, there is no state court decision adjudicating petitioner's ineffective

assistance of appellate counsel claims which is due any deference and this Court reviews

petitioner's constitutional claims *de novo*. *See Mays v. Stephens*, 757 F.3d 211 n. 11 (5th Cir. 2014),

*citing Cone v. Bell*, 556 U.S. 449, 472, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009) (holding that if the

state court does not reach the merits of a claim, the claim is reviewed de novo).


VI.
MERITS

A.  Effectiveness of Counsel on Appeal

Petitioner alleges (1) counsel Martinez failed to file appellate briefs or otherwise prosecute

or complete petitioner's direct appeals; (2) counsel Martinez advised petitioner to dismiss the direct

appeals in order to proceed with state writs of habeas corpus, (3) counsel Martinez failed to explain the disadvantages of dismissing the direct appeals to pursue the writs of habeas corpus and thus petitioner's consent to dismiss the appeals was not knowing or voluntary, (4) that counsel Martinez's inaction, advice to petitioner, and his failure to explain were all deficient, and (5) that petitioner was prejudiced by the deficient actions of counsel in that he was denied his right to a direct appeal of his convictions.  Petitioner contends that due to counsel Martinez's actions and improper advice, petitioner was not only denied direct appeals but was left "without any means to raise the claims" of abuse of trial court discretion or any other perceived error because "counsel's advice and inducement resulted in any such review being foreclosed."  Basically, petitioner argues that due to counsel's incorrect and misleading advice and ineffectiveness during the direct appeals, petitioner was prevented from prosecuting the direct appeals and/or was denied and deprived of his constitutional right to a direct appeal.

A criminal defendant has a constitutional right to effective assistance of counsel on his first appeal as of right.  *See Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Harris v. Day*, 226 F.3d 361, 366 (5th Cir. 2000).  In the appellate context, the right to effective assistance of counsel requires that counsel "be available to assist in preparing and submitting a brief to the appellate court and . . . play the role of active advocate."  *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).  The choice of issues to raise on appeal properly lie with appellate counsel, however, counsel must nevertheless support his client's appeal to the best of his ability.  *Jones v. Barnes*, 103 S.Ct. 3308, 3313-14 (1983).

Generally, before a petitioner can prevail on an ineffective assistance claim, he or she must meet the rule announced in *Strickland v. Washington* 466 US. 668 (1984) by showing counsel's

performance was both deficient and prejudicial.  Prejudice must be shown by demonstrating a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  There is an exception to that general rule, however, and if the complained of performance results in the actual or constructive denial of any assistance of counsel, a petitioner may not have to demonstrate the typical *Strickland*-type prejudice because prejudice is presumed.  *See Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); *Childress v. Lynaugh*, 842 F.2d 768, 772 (5th Cir.1988).  The issue becomes what constitutes actual or constructive denial of any assistance of counsel.

## *Deficiency*

The pleadings initially submitted by both petitioner and respondent did not show whether counsel Martinez's representation of petitioner on appeal was deficient.  Although the record showed appellate counsel failed to file timely appellate briefs and did not prosecute or complete petitioner's direct appeals prior to the dismissal of the appeals, there was no evidence from either petitioner or respondent why counsel Martinez failed to prosecute the direct appeals, whether petitioner was advised by counsel Martinez to dismiss the appeals and proceed, instead, with state habeas corpus petitions and, if so, whether counsel gave any reasons for that advice or explained the disadvantages of dismissing the direct appeals to pursue writs of habeas corpus.  Consequently, the Court held an evidentiary hearing.

Based on the testimony and exhibits submitted during the hearing, as well as the record before the Court, the undersigned finds:

1.  Petitioner was aware of his right to appeal his convictions and sentences.

2.  In April 2010, petitioner's mother retained counsel, Mr. David Martinez, to

appeal petitioner's convictions and sentences (after the revocation of deferred adjudication) and tendered an initial payment of $7,500 for such appeals. Counsel agreed to pursue appeals on petitioner's behalf.

3. Counsel filed Motions for New Trial alleging ineffective assistance of counsel during the revocation/adjudication proceeding.

4. Just over a week after filing the motions for new trial, counsel filed Notices of Appeal starting the appellate time deadlines.

5. Counsel Martinez did not comply with either the original briefing deadline or two (2) extended briefing deadlines in petitioner's direct appeals.

6. As late as July 2010, counsel Martinez contended there were issues related to the ineffectiveness of trial counsel he believed could be raised on direct appeal.

7. On September 1, 2010, counsel Martinez wrote petitioner assuring him he was busy researching his case and advising petitioner he would have the "completed product" in his hands on September 7, 2010, the extended appellate deadline for filing briefs.

8. On September 8, 2010, after missing the September 7, 2010 extended briefing deadline, counsel Martinez requested an additional extension of time to file petitioner's briefs, advising the appellate court petitioner may no longer wish to pursue his direct appeals.

9. On October 8, 2010, after Martinez failed to meet the third deadline for filing briefs, the state appellate court abated the appeals and remanded for a hearing in the trial court.

10. On October 14, 2010, after the motions for new trial had been overruled by operation of law, counsel Martinez wrote petitioner advising a frivolous appeal would delay the chance of getting a hearing on the Motions for New Trial. Counsel also advised petitioner he recommended state habeas applications in lieu of the direct appeals because the writ process would be faster, and trial court error and ineffective assistance of counsel claims could be raised in the state writs. Counsel advised petitioner he would have to withdraw his direct appeals in order to pursue state writs.

11. There is no evidence counsel Martinez advised petitioner of the consequences of dismissing his appeals or of the limited grounds that could be raised in a state habeas corpus proceeding when such grounds had not first been presented on direct appeal.

12.     There is no evidence petitioner was fully informed of the consequences of dismissing his appeals when he consented to the dismissal of his appeals.

13.     When counsel presented petitioner with the pleading to dismiss the direct appeals, several briefing deadlines had been missed, and the state trial court had been instructed to, among other things, review whether counsel would diligently pursue the appeals.

14.     Counsel Martinez never filed an appellate brief or an *Anders*[6] brief in petitioner's direct appeals.

15.     No arguable strategic reason to dismiss petitioner's direct appeals has been shown.  Counsel Martinez's advice to petitioner to dismiss his direct appeals to proceed with habeas corpus petitions, ostensibly because of the shorter length of the proceedings, has not been established as valid.

16.     Counsel's statement in his October 14, 2010 correspondence to petitioner that he did "not believe in filing a frivolous appeal, because all it will do is delay our chance at getting a hearing on our Motion for New Trial, before Judge Ron Enns, who is in control of your destiny" is not evidence of a strategic reason to dismiss petitioner's direct appeals.  By October 14, 2010, the motions for new trial had been overruled by operation of law and were no longer pending.

17.     In its answer to the state habeas applications filed by counsel, the State argued *exclusively* that petitioner "waived and forfeited" his claim of trial court error for failing to hold a hearing on the motions for new trial when petitioner failed to raise that claim on direct appeal.

18.     Counsel Martinez advised petitioner he would be getting affidavits from potential witnesses to support a claim of ineffective assistance of trial counsel during the revocation proceeding.  Counsel, however, failed to submit any proof or evidence, by affidavit or otherwise, supporting the ineffective assistance of counsel allegations in the state habeas petitions.

19.     There has been no showing by counsel Martinez during his testimony, or by the respondent, that petitioner could not have prosecuted both his direct appeals and, if unsuccessful, could have then filed state applications for writs of habeas corpus.

---

[6]*Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (counsel's role of an active advocate of his client requires he support his client's appeal to the best of his ability which required counsel to conscientiously examine the case and even if he finds the appeal to be wholly frivolous, to file a brief referring to anything in the record that might arguably support the appeal and furnish the brief to the appellant; the appellate court must afford the appellant an opportunity to submit his own brief and, if not wholly frivolous, argue the appeal).

Based upon the findings set out above, the undersigned finds counsel Martinez's representation fell below the acceptable standard and "wide range of professionally competent assistance," *see Strickland*, 466 U.S. at 690, and was deficient.  In making this finding, the undersigned does not accord any AEDPA deference since there were no state court findings on the merits of this issue.

*Prejudice*

Under *Strickland*, a petitioner must prove he was prejudiced by counsel's deficient performance unless the court determines counsel constructively abandoned petitioner on his appeal, or that petitioner was otherwise actually or constructively denied any assistance of counsel on appeal.  In such an instance, prejudice is presumed.  The issue is whether counsel Martinez's actions or inactions constituted actual or constructive denial of assistance of counsel resulting in petitioner being denied his right to appeal his convictions and sentences.  If so, no further showing of prejudice is needed.

Counsel was hired in April 2010 to appeal petitioner's convictions and sentences.  Counsel timely filed notices of appeal but missed each appellate briefing deadline despite multiple extensions of time.  Counsel Martinez testified he reviewed the record and researched issues for appeal through September 1, 2010 (the date counsel corresponded to petitioner).[7]  As late as September 7, 2010 (the date counsel signed the motion to extend the deadline for filing an appellate brief), counsel Martinez indicated he had "done some briefing of the applicable issues to be raised on appeal."  However, no preliminary or "completed product" was ever provided to petitioner nor

---

[7]Counsel Martinez states in his correspondence to petitioner, "Every time I read and re-read your record, I think about other issues and so the research just goes on and on.  Believe me, I have been trying to address all the issues that I see in a meaningful and fast paced manner....  I'm sure that the timing is right and trying to think of everything imaginable to attack [trial counsel] because that's where it all started."

was such produced at the evidentiary hearing.  Although there was no testimony of any meetings or

other communications between petitioner and counsel Martinez after September 1, 2010 and before

September 7, 2010, counsel Martinez related to the appellate court that *petitioner* had suggested the

appeals should be dismissed in order to pursue state writs of habeas corpus, and counsel's

prosecution of plaintiff's appeals appears to have stopped there.  A week after the appeals were

abated and remanded to the state trial court on October 8, 2010 for findings concerning, *inter alia*,

whether counsel Martinez would diligently pursue petitioner's appeals, counsel indicated his belief

that there were no issues that could be successful on appeal and advocated to petitioner that he

withdraw his appeals and pursue state writs of habeas corpus instead, urging grounds of abuse of

trial court discretion and ineffective assistance of counsel.  The next week, counsel Martinez

provided petitioner with an affidavit withdrawing the appeals and relinquishing his appellate rights.

This affidavit included the statement that petitioner was "satisfied that [counsel Martinez] [had]

rendered effective assistance in regards to pursuing [petitioner's] appellate rights" as well as a

gratuitous and conclusory statement that prior to signing the affidavit, petitioner had "thought

about" withdrawing his appeal but had not advised counsel Martinez that he had his (petitioner's)

consent to file a motion to dismiss.  In his testimony before this court, petitioner denied that *he*

suggested dismissing his appeals, but testified counsel Martinez convinced him to dismiss his

appeals in order to pursue habeas writs instead.  Petitioner testified he knew nothing about a state

writ of habeas corpus other than what counsel Martinez told him.

An attorney's failure to file and prosecute an appeal, when requested to do so by the

defendant, amounts to a frustration of the right to appeal and is presumptively prejudicial.  *United

States v. Tapp*, 491 F.3d 263 (5th 2007).  "There is no meaningful distinction between a lawyer who

fails to file any appeal at all, and one who files the appeal but then takes no action to prosecute that

appeal, ignores court orders, and ultimately advises his client to dismiss the appeal and instead to file" another less beneficial action. *Griffin v. United States*, 109 F.3d 1217, 1220 (7th Cir. 1997) (counsel advised petitioner to dismiss his appeal to pursue a non-existent remedy).  Moreover, upon being hired to appeal a defendant's conviction and sentence, appellate counsel is required to either put forth a good faith effort to prosecute the appellant's appeal or to file an *Anders* brief and seek withdrawal. *See Penson v. Ohio*, 488 U.S. 75, 81-83 (1988); *Anders v. California*, 386 U.S. 738 (1967).

In the end, petitioner was afforded no representation at all on direct appeal.  The undersigned finds counsel Martinez constructively abandoned petitioner's direct appeals by failing to file briefs, by failing to at least file *Anders* briefs and seek withdrawal, and in advising petitioner to authorize dismissal of the direct appeals. *Cf. Harris v. Day*, 226 F.3d 361 (5th Cir. 2000) (defendant was constructively denied effective assistance of appellate counsel when counsel filed inadequate *Anders* brief).  The undersigned finds petitioner's authorization and/or acquiescence  to withdraw the appeals was based solely upon counsel Martinez's advice, did not constitute an informed decision, and did not amount to a knowledgeable abandonment of the appeals.  Petitioner was denied effective legal representation on direct appeal and the actions of his appellate counsel constructively denied petitioner his right to appeal.  The subsequent work Martinez performed in order to file the state habeas corpus petitions does not change this finding.  The work did not benefit the direct appeals and was of no use in prosecuting the appeals.  In addition, certain claims of trial court error, not raised on direct appeal, were not cognizable on state habeas.

As petitioner's appellate counsel provided no meaningful appellate assistance at all, prejudice is presumed.  Consequently, petitioner need not further establish, as a prerequisite to

habeas relief, that he had some chance of success on appeal.[8]  *Cf. Carmell v. Quarterman*, 292

Fed.Appx. 317, 2008 WL 4158927 (5th Cir. Sept, 8, 2008).  The undersigned finds petitioner was

denied effective assistance of counsel on appeal.


## B.  Conflict of Interest

This claim raised by petitioner is not clear.  It appears petitioner is claiming a conflict of

interest existed between he and appellate counsel Martinez because counsel had a strong personal

incentive to dismiss the appeal due to the numerous missed appellate briefing deadlines and the

inquiry into his appellate representation of petitioner.  The undersigned has found petitioner was

denied effective representation of appellate counsel.  Consequently, this claim need not be addressed

further.


## C.  Double Jeopardy

In several pleadings and in his reply to respondent's answer, petitioner asserts the imposition

of a fine in the order deferring adjudication was a violation of the plea agreement as a finding of

guilt was not made but, instead, adjudication was deferred and therefore no punishment, *i.e.*, a fine,

should have been imposed.

Petitioner also asserts the imposition of the fine constituted punishment for his offense, that

the collection of the fine satisfied such punishment, and that after the "execution" of such

punishment, the state trial court had no jurisdiction to adjudicate guilt and impose another sanction,

---

[8]The undersigned notes petitioner has not identified grounds of error that should have been asserted on appeal, nor has he shown the likelihood of success of any such grounds.  The only grounds of error this Court is aware of are the grounds raised in petitioner's motion for new trial and first state habeas application, *i.e.*, that the trial court abused its discretion in failing to hold a hearing on petitioner's motion for new trial, and that trial counsel was ineffective at the revocation hearing for failing to call witnesses and for refusing to allow petitioner to testify.

*i.e.*, a term of imprisonment.  Petitioner contends the state trial court had already imposed and enforced a fine and, therefore, that any subsequent punishment violated double jeopardy and due process.

Article 42.12, section 5(a) of the Texas Code of Criminal Procedure allows deferred adjudication:

> [W]hen in the judge's opinion the best interest of society and the defendant will be served, the judge may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on community supervision.

Although there is no finding of guilt, there is a judicial finding that the evidence substantiates the defendant's guilt, followed by conditions of probation that may include a fine and incarceration. Tex.Code Crim. Proc. art. 42.12, sec. 5(a) ("The judge may ... require any reasonable conditions of community supervision ... that a judge could impose on a defendant placed on community supervision for a conviction that was probated and suspended, including confinement."). The case is "temporarily stilled and the accused ... [is] permitted an opportunity to demonstrate his capacity for prescribed good behavior during a specified period." *Taylor v. State*, 131 S.W.3d 497, 500 (Tex.Crim.App. 2004).  If the defendant succeeds, the case, for most purposes, "disappears."  If he fails, the case continues on as if it had never been interrupted.  *Id*.

Once the defendant successfully completes community supervision, the proceedings are dismissed.  *See* Tex.Code Crim Proc. art. 42.12, § 5(c).  If the defendant violates the conditions of supervision, the court may enter an adjudication of guilt on the original charges and impose a punishment.  *See id*. § 5(b).  A dismissal and discharge upon completion of supervision is not a "conviction" triggering disqualifications or disabilities usually visited upon convicted felons.  *See*

*id*. § 5(c).  Until supervision is complete, however, the deferred adjudication is treated as a pending

charge.  *United States v. Bishop*, 264 F.3d 535, 556 (5th Cir. 2001); *see Thomas v. State*, 796 S.W.2d

196, 197-98 & n. 1 (Tex.Crim.App. 1990).

The orders deferring adjudication in petitioner's cases assessed a $2,000 fine as a condition

of community supervision, and not as a sentence.[9]  The fact that the fine was not probated did not

render it a sentence rather than a condition of probation.  In fact, "[n]either the assessment of

deferred-adjudication community supervision nor its accompanying fine is 'punishment' for

purposes of double jeopardy."  *Gardner v. State*, 2002 WL 31319987 (Tex.App.–Houston [1st]

2002).  As succinctly noted by the state appellate court in Amarillo:

> Having one's adjudication of guilt deferred and being placed on community supervision during that period is not tantamount to being sentenced and punished.  Thus, complying with the conditions of his continued probation or community supervision, which includes the payment of a "fine," does not mean that he has completed or been subjected to some aspect of punishment as contemplated by the Double Jeopardy Clause.

*In re Walker*, 2010 WL 1978218 *1 (Tex.App.–Amarillo, May 18, 2010) (citations omitted).

Petitioner's compliance with the conditions of his probation or community supervision to pay a fine

was not equivalent to petitioner being subjected to some aspect of punishment as contemplated by

the Double Jeopardy Clause.  Once a trial court adjudicates a defendant's guilt after previously

deferring adjudication, the entire range of punishment is open to the court."  *Taylor v. State*, 131

S.W.3d at 501.  When the state trial judge adjudicated petitioner's guilt, he assessed a 20-year

sentence.  The trial court did not levy another fine or include a fine in the written judgment as part

of petitioner's sentence or punishment.  The assessment of the prison sentence after petitioner's

adjudication of guilt, and subsequent to petitioner's payment of his fine as a condition of community

---

[9]The Orders also assessed monthly supervision fees and court costs as conditions of community supervision.

service, did not violate the Double Jeopardy clause.  Petitioner's claims of lack of jurisdiction, denial of due process, and violations of the prohibition against double jeopardy are without merit.

## VII.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the consolidated petitions for writs of habeas corpus filed by petitioner MICHAEL DON DENTON be GRANTED, the convictions be vacated, and petitioner be released from custody unless respondent affords petitioner an out-of-time appeal with the assistance of counsel within such time as the District Judge may fix.

## VIII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this   27th   day of February 2015.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the

signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).